Filed 6/30/22  P. v. Caudillo CA1/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAIME MARIA CAUDILLO et al.,<br><br>    Defendants and Appellants. | A164248<br><br>(Merced County<br> Super. Ct. Nos. 15 CR-00939A &<br>15 CR-00939B) |

A jury found defendants Jaime Maria Caudillo and Steven Rincon guilty of assault on a peace officer, felon in possession of a firearm, active participation in a criminal street gang, and found true that they committed the offenses for the benefit of, or in association with, a criminal street gang. In this appeal, Rincon asserts that his assault on a peace officer conviction and the jury's true findings on the gang enhancements are not supported by substantial evidence and that the trial court erred in denying his motion for a new trial, while Caudillo raises several sentencing errors.

After the appeal was fully briefed, the Legislature enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which amended Penal Code[1] section 186.22 to require proof of additional elements to establish an active participation offense or a gang-related enhancement.  The

---

[1] All statutory references are to the Penal Code.

new legislation also added section 1109 to the Penal Code to require bifurcation of gang enhancement allegations from the underlying charges upon a request from the defense, and separate trial of any active participation count unless the other substantive counts require gang evidence as an element. (Stats. 2021, ch. 699, §§ 1–5.)

Both defendants filed supplemental briefs, arguing that Assembly Bill 333 applies retroactively and requires reversal of their active participation convictions and gang-related enhancements. The Attorney General concedes a remand for retrial of those charges is necessary. We agree, and will remand for that purpose. Defendants also contend, however, that section 1109 applies retroactively, and requires reversal of their convictions for assault on a peace officer and felon in possession of a firearm. We conclude we need not decide whether section 1109 applies retroactively, because any error in not separately trying the gang-related charges was harmless under the circumstances of this case. We otherwise affirm the judgments.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.     *The Traffic Stop and Shooting*

About 2:00 a.m. on February 28, 2015, Merced Police Officer Brian Rinder, who was patrolling for drivers who may be have been under the influence, spotted a burgundy Chrysler 200. Rinder began following the car to look for possible signs that the driver was driving under the influence. As he was following the Chrysler northbound on G Street, Rinder saw it make a left turn without yielding to oncoming traffic. Rinder turned on his red-and-blue traffic enforcement lights to get the vehicle to stop. At first, the driver did not stop, and Rinder called dispatch through his radio to say the car was

2

not pulling over.  The driver drove an entire block, then made a right turn before he eventually pulled over in the middle of the block on H Street.

After the Chrysler pulled over, Officer Rinder approached the driver's side of the vehicle.  The car was still running.  Rinder asked the driver, later identified as Rincon, for his driver's license.  Rinder explained he had pulled Rincon over because of the traffic violation, and "to evaluate if [Rincon] had any signs of impairment."  Rincon gave Rinder his driver's license.  Rinder noticed that Rincon had "two lines with four dots on top of it [*sic*]" tattooed directly underneath his left eye, which Rinder immediately recognized as a gang tattoo.  Rincon also looked Rinder in the eyes as he was speaking with him.

Caudillo was sitting in the front passenger seat.  Rinder noticed he seemed "very tense" and "just stared straight" ahead.  Rinder thought this was unusual.

While Rinder was talking with Rincon, a second police officer, Officer Ryan Rasmussen, arrived on the scene in a different car.  As Rasmussen approached on the passenger side of the Chrysler, Rinder gestured for Rasmussen to watch Caudillo.  About 15 seconds after Rasmussen arrived, a third officer, Officer Joseph Opinski, also arrived at the scene.

Officer Rasmussen asked Caudillo several times to roll down the front passenger window, but Caudillo did not do so.  Rasmussen then told Rinder to order Caudillo to roll it down.  Eventually, Caudillo reached over with his left hand, which was "shaking really bad," and rolled down the window.  Caudillo's right hand was not visible to the officers because it was covered with a hat or a sweatshirt.  Rasmussen had asked Caudillo for his identification twice but Caudillo just kept looking forward and ignored him.

3

Officer Rasmussen then gave a command for Caudillo to show his hands. Caudillo did not do anything and kept looking out the front window. Rasmussen again told Caudillo to show his hands. Caudillo ignored him and kept staring straight ahead. At that point, Rasmussen realized " 'something's not right here.' " Rasmussen removed his gun and put it down by his side. Then he took half a step back, pointed his gun at Caudillo, and said, " 'Show me your fucking hands.' " While Rasmussen was ordering Caudillo to show his hands, Officer Rinder ordered Rincon to turn off the car, but he did not do so.

"Within a split second," Caudillo raised his right hand. Rasmussen saw two or three muzzle flashes come from the passenger-side window and heard a gunshot. Bullets struck Rasmussen in his abdomen and another bullet "nicked the middle finger" of his right hand "and went down . . . through the ring finger" and pinkie finger. Rasmussen's bulletproof vest stopped the bullets to the abdomen, but his ring finger was completely shattered and his pinkie finger "had a lot of broken bones in it."[2] Officers returned a "volley of gunfire" and Officer Opinski radioed that an officer was "down."

Defendants' vehicle "took off" almost instantly. Officer Rinder heard a noise that made him think the car was shifted into gear before it sped off. Opinski jumped in his patrol car and attempted to follow defendants, but quickly lost sight of their vehicle. Defendants were later located following a search. Rincon was found hiding in a bedroom closet and officers had to use force to remove and arrest him.

**B.    Other Evidence**

At some point during his search for defendants, Officer Opinski saw defendants' Chrysler, which had crashed in an alleyway. The car windows

_____

[2] His pinkie finger was later amputated.

were shot out and Caudillo's prosthetic leg was located near the car. When officers returned to the alleyway later to search for evidence related to the shooting, they discovered a .38 Special revolver with five spent shell casings in a nearby backyard.

In addition, it was discovered that the day before the shooting, Rincon sent several text messages. One message was read by a gang expert at trial as follows: " 'I'm wit James n did you ever get them bullets for me the 45 autos in the 38' [then] the words S-P-L-S. which I believe is to be special, always .38 Specials."[3] Another message read, " 'K IMA be out there trying to come up help me out in set up a kick I have a car n my boy n two straps.' "[4]

Yvonne D., who knew Rincon as a young boy and considered him part of her family, spoke with police shortly after the shooting. Due to her reluctance to testify at trial about details of her interactions with defendants on the day of the shooting, the court allowed the jury to hear portions of her interview with police as a prior inconsistent statement. Yvonne D. said that Rincon showed up at her home between 8:00 and 8:30 p.m. with someone who had a prosthesis. When asked if she saw Rincon in possession of a firearm "when they were here at [her] house earlier in the day," she stated, "They both had one." She said one was a revolver and one was not. She explained the "[o]ne with the peg leg" had the revolver and Rincon had the other gun.

---

[3] Caudillo's opening brief quotes the message as follows: " 'I'm wit James n did you ever get them bullets for me the 45 autos in the 38 sp/s. Always.' " Caudillo cites to exhibit 134, but that exhibit was not included in the appellate record.

[4] Officer Steven Odom testified that " 'straps' is a street name for gun, firearm that gang members will use in their terminology."

## C.    *Gang Evidence*

Officer Steven Odom testified as a gang expert for the prosecution. Odom testified that the Norteño gang's primary activities include murder, shootings, possession of firearms, criminal threats, selling narcotics, prostitution, and vehicle theft, among others.  According to Odom, another characteristic of the Norteño gang is the shared belief that "law enforcement is the ultimate enemy" because they "perceive [law enforcement] as the ones who are stopping their criminal organization."

Odom testified that firearms are particularly important to the gang because they can be used for offensive and defensive purposes.  Odom explained that the gang often uses firearms "to instill fear in law enforcement" as well as among the overall community and "to show they are not afraid to engage their rival at any point."  He also noted that among the basic rules Norteños have to follow are "to never have any cowardice" in dealings with law enforcement, to "never leave a fellow Soldado, which is soldier, alone in battle."  Odom explained that Norteños are "militaristic" in their structure and are expected to "defend their fellow soldier in battle with the enemy."  The consequences for abandoning a fellow "soldier" could include assault, loss of status, removal from the gang, or even being killed.  He agreed it is important for Norteños to know about and have access to firearms and observed that they "need to be aware that there's a firearm accessible to them."  For that reason, they are expected to notify each other if they bring a gun into a car, because they need to be able to use it if they encounter a rival.

Odom testified if a Norteño shot a police officer it would be "[v]ery important" to have another Norteño with him, both to defend him in battle

6

and to report back to the gang that the person had "put in work" which could elevate that person's status in the gang.

Based on a hypothetical mirroring the facts of this case, Odom opined that both the shooting of the police officer and the possession of firearms would have been committed for the benefit of or in association with the Norteño gang. As to possession of a firearm, Odom based his conclusion on the fact that there were two active gang members associating together and that possession of a firearm "benefits . . . the gang member and the gang itself" because "they can use that firearm in offense or defensive manners to commit felonious crimes for overall benefit of their gang by instilling that fear in the community or rivals or, in this hypothetical, law enforcement." As to the shooting of a police officer, Odom's opinion was based on the fact that there were "two Nortenos associating together" and that the shooting benefited "their street gang and that gang member's status within the gang as well as showing that they're willing to do whatever it takes, and using a firearm, especially on a law enforcement officer, the ultimate enemy, again, to instill fear in the community, rivals and law enforcement." Odom also opined the crimes would have been done with the specific intent to promote criminal street gang activity.

Three other police officers also testified to their prior contacts with defendants. Both Rincon and Caudillo admitted to the police they were members of the Norteños.

### D.    *Procedural History*

On November 27, 2018, the district attorney filed a third amended information in the Merced County Superior Court charging defendants with assault with a firearm on a peace officer (§ 245, subd. (d)(1); count 1), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2), and street

7

terrorism (active participation in a criminal street gang) (§ 186.22, subd. (a); count 3). It was further alleged in count 1 that Caudillo personally discharged a firearm causing great bodily injury (§ 12022.53, subds. (d) & (e)(1)), and that Rincon was a principal in the commission of the offense (§ 12022.53, subds. (d) & (e)(1)). In counts 1 and 2, it was alleged that the offenses were committed for the benefit of the Norteño street gang. (§ 186.22, subd. (b).) The information further alleged that Rincon had two prior serious felony convictions (§ 667, subd. (a)(1)) and two prior strikes (§ 667, subds. (b)–(i)), and that Caudillo had one prior serious felony conviction (§ 667, subd. (a)(1)), and one prior strike (§ 667, subds. (b)–(i)).

Trial on the prior convictions allegations was bifurcated. On May 22, 2019, a jury found defendants guilty as charged and found all allegations true. The trial court subsequently found all prior conviction allegations true. On July 30, Rincon filed a motion for new trial, which was denied by the trial court.

On August 19, 2019, the trial court sentenced Rincon to an aggregate term of nine years eight months consecutive to 50 years to life in state prison and Caudillo to an aggregate term of 25 years eight months, consecutive to a term of 25 years to life.

## II.

## DISCUSSION

### A.   *Substantial Evidence*

Rincon challenges the sufficiency of the evidence supporting his conviction for aiding and abetting assault on a peace officer and the jury's true findings on the gang enhancements.

8

### 1. Standard of Review

When considering a challenge to the sufficiency of the evidence, we consider " ' "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Casares* (2016) 62 Cal.4th 808, 823, disapproved on another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) " 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.) " '[I]t is the jury rather than the reviewing court that weighs the evidence, resolves conflicting inferences and determines whether the People have established guilt beyond a reasonable doubt.' " (*Casares,* at p. 823.) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

### 2. Aiding and Abetting Assault

Rincon first contends the evidence was insufficient to support his conviction for aiding and abetting assault with a firearm on a peace officer. Specifically, he argues the prosecution failed to present substantial evidence he had the necessary mental state, i.e., that he acted " 'with knowledge of the criminal purpose of the perpetrator' " and " 'with an intent or purpose either of committing, or of encouraging or facilitating commission of' " the offense.

9

" '[A]n aider and abettor will "share" the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' " (*People v. Maciel* (2013) 57 Cal.4th 482, 518.) "Presence at the scene of a crime, alone, is insufficient to establish aiding and abetting liability." (*People v. Em* (2009) 171 Cal.App.4th 964, 970.) However, " '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

Here, ample evidence supports the jury's guilty verdict on Rincon's aiding and abetting assault conviction. The day before the shooting, Rincon sent a text message asking " 'did you ever get them bullets for me the 45 autos in the 38 [special].' " He then sent another text message stating: " 'K IMA be out there trying to come up help me out in set up a kick I have a car n my boy n two straps.' " These messages suggest Rincon knew Caudillo had a gun, and was helping procure ammunition for his weapon. Moreover, earlier in the day before the shooting, Rincon and Caudillo visited Yvonne D. together, where they both showed her their firearms. Officer Odom, the prosecution's gang expert, also testified that Norteños are expected to notify each other if they bring a gun into a car. Taken together, this evidence shows Rincon knew Caudillo had a weapon and was prepared to aid and abet Caudillo in an assault.

In addition, after Officer Rinder activated his traffic enforcement lights, Rincon drove an entire block and a half to a darker area before pulling over, suggesting Rincon intentionally selected a location to stop where visibility was worse, making it more difficult for officers to see. Rincon also

10

left the car running during the traffic stop. After Rinder commanded Rincon to turn off his car, he refused to do so, making it easier to escape quickly after Caudillo shot Officer Rasmussen. Indeed, Rinder testified the car took off within "split seconds" after Rasmussen was shot. (See, e.g., *People v. Medina* (2009) 46 Cal.4th 913, 924 [evidence that defendants fled after shooting was treated as an additional factor suggesting aiding and abetting liability].) A juror could reasonably infer from these facts that Rincon drove and parked the car in a manner to facilitate the shooting.

Finally, expert evidence established that both Rincon and Caudillo were active members of the Norteños, a criminal street gang whose primary activities include murder, shootings, and possession of firearms. The prosecution's gang expert testified that one of the unifying beliefs among Norteños is the shared view that "law enforcement is the ultimate enemy." He explained that Norteños use firearms to "instill fear in law enforcement" and to "show that they are not afraid to engage their rival at any point." Likewise, he testified that Norteños are expected "[t]o defend their fellow soldier" in battle and that the consequences for failing to do so are severe. A rational trier of fact could conclude that Rincon aided and abetted Caudillo to protect him, to advance his own position in the gang, or to instill fear in law enforcement.

Rincon contends the prosecution's aiding and abetting theory was purely speculative based on the record in this case. He argues there was no evidence of a preplanned assault on a police officer,[5] that Rincon's behavior

---

[5] We observe that premeditation is not required for aiding and abetting assault and Rincon need only have formed intent to assist Caudillo during the commission of the offense. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Moreover, he did not need advance knowledge of Caudillo's intent to commit the offense. " 'Aiding and abetting may be committed "on the spur of the

11

during the traffic stop was innocuous, and that Rincon's decision to leave the car running during the traffic stop and immediate flight after the shooting were equally consistent with innocence. These arguments essentially ask us to reweigh the evidence, which of course, we may not do on appeal. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*); *People v. Ceja* (1993) 4 Cal.4th 1134, 1139 ["an appellate court may not substitute its judgment for that of the jury. If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding."].)[6] In sum, viewing the entire record in the light most favorable to the judgment and accepting all logical inferences the jury might have drawn from the evidence, sufficient evidence supports Rincon's conviction for aiding and abetting assault on a peace officer.

### 3. *Gang Enhancements*

Rincon next contends there in insufficient evidence to support the findings necessary for the gang-related enhancements under sections 186.22, subdivision (b) and 12022.53, subdivision (e)(1). Although the recent passage of Assembly Bill 333 requires that we vacate the gang findings for reasons explained below, we will address these claims to determine whether the enhancements may be retried on remand. (See, e.g., *People v. Eroshevich*

---

moment," that is, as instantaneously as the criminal act itself.' " (*People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742.)

[6] Rincon also asserts that the evidence shows his behavior was not a gang-related act to instill fear, but the product of Caudillo's spontaneous decision due to his fear of being arrested on an outstanding warrant. Again, while this may be *one* inference a jury could draw from the evidence, our task on review is not to reevaluate the jury's decision, but to determine whether substantial evidence supports the verdict. (*Albillar*, *supra*, 51 Cal.4th at p. 60.)

(2014) 60 Cal.4th 583, 591 [defendant may not be retried if the judgment is reversed because, as a matter of law, the evidence was insufficient to support the conviction]; *People v. Sek* (2022) 74 Cal.App.5th 657, 669 [double jeopardy does not bar a retrial when appellate court does not reverse based on insufficiency of the evidence].)

Under the law in effect at the time of defendants' trial, there are two elements to the criminal street gang enhancement under section 186.22, subdivision (b) the crime must have been committed (1) "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (Former § 186.22, subd. (b)(1); *Albillar, supra,* 51 Cal.4th at p. 59.)

### a. Count 1

Rincon first argues the evidence was insufficient to support true findings on the section 186.22, subdivision (b) and section 12022.53, subdivision (e)(1)[7] enhancements to count 1 (aiding and abetting assault on a peace officer).

As to the first prong (the "gang-related" prong), sufficient evidence supports the jury's true finding based either on a theory that Rincon acted "for the benefit" of a criminal street gang or that he acted "in association with" the gang. (See *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*) [only one of three gang-related prong theories need to be proven—

---

[7] Section 12022.53, subdivision (e)(1) provides for a firearm enhancement applicable "to any person who is a principal in the commission of an offense" if "[t]he person violated subdivision (b) of Section 186.22," and "[a]ny principal in the offense committed any acts specified in subdivision (b), (c), or (d)."

13

that the crime was committed "(1) for the benefit of, (2) at the direction of, *or* (3) in *association* with a gang"].)

As to the "for the benefit of" theory, Officer Odom testified that the Norteños were a criminal street gang, and that Rincon and Caudillo were self-admitted or documented members of that gang. Three other police officers corroborated this testimony. Odom testified that the gang's primary activities included murder, shootings, and possession of firearms, that gang members share a belief that "law enforcement is the ultimate enemy," and that Norteños perceive law enforcement "as the ones who are stopping their criminal organization." Odom also testified that the gang uses firearms "to instill fear in law enforcement" and "to show that they are not afraid to engage their rival at any point," and gang members are expected to "defend [their] fellow soldier in battle." In response to a hypothetical based on the facts of the case, Odom stated the shooting of the police officer benefitted the gang by enhancing the status of the gang members and "instilling . . . fear in the community or rivals, or . . . law enforcement." Under these facts, a rational trier of fact could conclude that Rincon aided and abetted the assault on Rasmussen to benefit the gang. (*Albillar*, *supra*, 51 Cal.4th at p. 63 ["Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' "]; *People v. Vang* (2011) 52 Cal.4th 1038, 1048 [" 'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the . . . gang enhancement."].)

As to the "in association with" theory, Rincon was indisputably with Caudillo when he assaulted Rasmussen. They were traveling together in a

14

red[8] Chrysler. As discussed above, substantial evidence supported the jury's finding that Rincon aided and abetted Caudillo in the assault on Rasmussen. The jury could reasonably infer from those facts that Rincon and Caudillo came together as gang members to commit their crimes. (See *Morales*, *supra*, 112 Cal.App.4th at p. 1198 ["the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"].)

Regarding the second prong (the specific intent prong), courts recognize that specific intent to promote, further, or assist in criminal conduct by gang members " 'usually must be inferred from the facts and circumstances surrounding the offense' " and is rarely " 'susceptible of direct proof.' " (*People v. Rios* (2013) 222 Cal.App.4th 542, 567–568.) As our Supreme Court explained in *Albillar*, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 68.)

Here, the gang expert testified that Rincon and Caudillo were active Norteños in part based on their visible tattoos. Rincon's tattoos were prominently displayed on his body, such that when Officer Rinder first encountered him, he immediately recognized Rincon as a Norteño. A review of photographs with Rincon and other gang members showed Rincon flaunted his association with the Norteños, flashing their gang signs. Odom testified to the importance for Norteños of instilling fear in enemies, that law enforcement is the "ultimate enemy" and that gang members seek to scare law enforcement to defend their gang and carry on their criminal activities.

---

[8] One officer testified that Norteños identify with the color red.

15

Further, as discussed above, Odom testified that Norteños are expected to defend a fellow soldier in battle. In response to a hypothetical based on the facts of the case, Odom opined the participants in the assault were acting in association with and to benefit the gang, and that their crimes were done with specific intent to further criminal street gang activity. In addition, shortly before the shooting, a text message from Rincon shows he was attempting to procure ammunition for Caudillo. Moreover, as discussed above, because substantial evidence showed that Rincon aided and abetted Caudillo, a known gang member, in the assault on Rasmussen, the jury could reasonably infer Rincon had the specific intent to promote, further, or assist criminal conduct by a gang member. (*Albillar, supra,* 51 Cal.4th at p. 68; *People v. Weddington* (2016) 246 Cal.App.4th 468, 485.)

### b. Count 2

Rincon next contends insufficient evidence supports the jury's true finding on the gang enhancement for possession of a firearm by a felon. We disagree.

First, as to the "gang-related" prong, there was sufficient evidence to sustain a finding that the crime was committed "in association with" a criminal street gang member within the meaning of section 186.22. Rincon was accompanied by Caudillo, and both men were Norteños. Further, it is undisputed that Rincon possessed a firearm when he was with Caudillo. These facts are sufficient to show he acted "in association with" a criminal street gang. (See, e.g., *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 [sufficient evidence supported gang enhancement where the defendant, an admitted gang member, committed crimes with another admitted gang member]; *Morales, supra*, 112 Cal.App.4th at p. 1198 [evidence that the

16

defendant knowingly committed the charged crimes in association with two fellow gang members was sufficient to support gang enhancements].)

Regarding the "specific intent" prong, the record contains substantial evidence Rincon possessed the firearm with the specific intent to further gang members' criminal activities. There was evidence Rincon possessed a firearm and was an admitted Norteño. Odom testified that possession of firearms was one of the primary activities of the gang and that firearm possession benefitted the gang by allowing them to commit crimes to instill fear in communities, their rivals, and law enforcement. (See *People v. Vang, supra*, 52 Cal.4th at p. 1048 [" 'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support [a] gang enhancement"].) There was evidence that Rincon possessed the firearm when he was with Caudillo at Yvonne D.'s house. Moreover, Rincon sent text messages regarding their possession of firearms and attempting to procure ammunition. Taken together and viewed in the light most favorable to the prosecution, such evidence supports a finding that Rincon possessed a firearm in association with Caudillo, another gang member, with the specific intent to further his criminal conduct.

Rincon relies on *People v. Ramon* (2009) 175 Cal.App.4th 843, to argue the mere fact that Rincon was a gang member, unlawfully possessing a weapon in the presence of another gang member, is insufficient to establish the section 186.22 gang enhancement. In *Ramon,* the gang expert opined that the defendant committed his crimes for the benefit of a criminal street gang because (1) both he and his codefendant were members of the gang, and (2) police stopped the two in gang territory. (*Ramon*, at p. 849.) The appellate court vacated the defendant's gang enhancement because "[t]here were no facts from which the expert could discern whether [the defendants]

17

were acting on their own behalf the night they were arrested or were acting on behalf of the [gang]." (*Id.* at p. 851.)

This case is distinguishable from *Ramon*. Although the court in *Ramon* found the evidence insufficient to show the defendants were "acting to promote a criminal street gang," the court explained its "analysis might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang." (*Ramon, supra*, 175 Cal.App.4th at p. 853.) Here, by contrast, Odom testified possession of a firearm was one of the primary activities of the gang.

In addition, the gang expert in *Ramon* opined the defendant committed his crime for the benefit of the gang. (*Ramon, supra*, 175 Cal.App.4th at p. 849.) Here, the prosecutor theorized Rincon possessed the firearm either for the benefit of, *or* in association with, the Norteños. Even if there were insufficient evidence showing he possessed the firearm for the benefit of the gang, there was ample evidence he possessed it in association with the Norteños. On this record, the jury could reasonably infer that Rincon acted in association with another gang member "with the specific intent to promote, further, or assist in criminal conduct" by Caudillo. (§ 186.22, subd. (b)(1); see *People v. Martinez, supra*, 158 Cal.App.4th at p. 1333 [evidence sufficient to support gang enhancement where "defendant, an admitted gang member sporting gang tattoos, actually committed a robbery with a gang confederate]; *Morales, supra*, 112 Cal.App.4th at p. 1198.) In sum, substantial evidence supported the jury's true finding on the gang enhancement as to count 2.

## B.    *Motion for New Trial*

Rincon also asserts the trial court erred in denying his motion for a new trial for two reasons: (1) because the evidence was insufficient to support his conviction on count 1 and the jury's true findings on the gang enhancement

18

allegations in counts 1 and 2, and (2) because the trial court failed to address his argument that the jury's verdict was contrary to the legal principles governing circumstantial evidence.

### 1. *Relevant Background*

After the jury returned its verdict, defense counsel filed a motion for new trial arguing that the verdict was contrary to the law and the evidence because insufficient evidence supported his guilt on count 1 and the gang enhancements. In his memorandum of points and authorities supporting the motion, defense counsel argued that the jury's verdict was "clearly contrary to the evidence" because the "uncontroverted testimony" showed that Rincon "lacked the requisite intent and knowledge to support a finding of guilty on the assault with a firearm charge and the gang enhancements." Counsel asserted that "[t]he People's own witnesses testified that defendant's actions during the vehicle stop and even his fleeing the scene upon shots being fired were perfectly consistent with the conduct of a person who had no knowledge that any shooting would take place as well as consistent with a person who was fleeing to escape being shot as opposed to being done to help a fellow gang member. The law is clear that faced with two such reasonable inferences from the evidence, the Jury was required to find that he lacked the requisite intent/knowledge and enter verdicts of not guilty." Counsel argued the jury ignored the court's instruction on that legal principle, and accordingly the court must grant a new trial.

In addressing the motion, the trial court began by summarizing counsel's arguments, including the arguments that insufficient evidence supported the verdict and the jury's verdicts were in error because it disregarded the legal principles concerning circumstantial evidence. The court then stated: "But in this case I find the evidence does have sufficient

probative value to sustain the verdicts based upon the totality of the evidence presented at trial, not just the testimony of the witnesses who were present during the stop; although[] they certainly play a factor in this case." The trial court discussed in detail the evidence supporting the verdict, including Yvonne D.'s testimony that both defendants were in her residence armed with firearms the evening before the shooting, Rincon's delay in stopping the car after Officer Rinder put his lights on, the evidence that the car was left running during the traffic stop, Rincon's driving off immediately once shots were fired, and Rincon's presence during the stop when Officer Rasmussen was yelling at Caudillo to show his hands when Caudillo was obviously nervous and shaking, covering the gun with his right hand. The court acknowledged that Rincon "did not appear nervous to Officer Rinder," but noted that he took off "immediately" after shots were fired and later "was found hiding in the closet" and had to be removed by force. The court observed that the "most significant testimony" was Officer Odom's expert testimony regarding the culture of Norteños and the rules they have to follow, including the testimony that "Nortenos would know if someone else in the car is armed" and "they would have a duty to fight back regarding the police." The court concluded its ruling by stating: "So I think given the totality of the circumstances, there is substantial evidence that Mr. Rincon knew exactly what was going to take place during that traffic stop, and that he did have the required intent and mental state to aid and abet Mr. Caudillo in the assault upon Officer Rasmussen, so I'll deny the new trial motion."

### 2.   *Analysis*

We review the trial court's denial of a motion for new trial for abuse of discretion. (*People v. Davis* (1995) 10 Cal.4th 463, 524; *People v. Watts* (2018) 22 Cal.App.5th 102, 115.) " ' "The determination of a motion for a new trial

20

rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*Davis*, at p. 524.) " 'Such an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard.' " (*Watts*, at p. 115.)

Under section 1181, subdivision 6, the trial court may grant a new trial when the jury's verdict is contrary to the law or the evidence. In deciding a motion for new trial, the trial court "should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict." (*People v. Robarge* (1953) 41 Cal.2d 628, 633.) The court must independently weigh the evidence, but the court may not disregard the jury's verdict or simply decide what result it would have reached had the case been tried to the court. (*Ibid.*) Rather, the trial court must "consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." (*Ibid.*)

Here, the record reflects that the trial court understood the correct legal standard and properly considered and weighed all of the evidence supporting the verdict. The court stated the motion "does require me as the trial judge to independently review the evidence; although[] I should not ignore the jury's verdict, and I am to be guided by a presumption in favor of the correctness of the jury's verdict; thus, I cannot arbitrarily reject a verdict if it is supported by substantial evidence." The court then explained why, in its independent assessment, sufficient evidence supported the verdict. For reasons we have discussed above, we reject Rincon's argument that the trial court erred because insufficient evidence supported his conviction for aiding and abetting assault on a peace officer.

As to Rincon's assertion that the trial court erred by failing to address his argument that the verdict was contrary to legal principles governing circumstantial evidence, we disagree the trial court erred or that reversal is mandated by the circumstances of this case.[9]  First, the trial court acknowledged defense counsel's argument that the verdict was in error because the jury was required to accept reasonable inferences pointing toward innocence if shown by the circumstantial evidence.  The court nonetheless found "the evidence does have sufficient probative value to sustain the verdicts *based upon the totality of the evidence presented at trial*, not just the testimony of the witnesses who were present during the stop; although[] they certainly play a factor in this case."  (Italics added.)  The court went on to explain how evidence of events before, during, and after the traffic stop, together with the expert testimony, supported the jury's verdict.

Further, in support of his argument the trial court erred, Rincon points to Officer Rinder's "uncontradicted testimony" that showed Rincon's behavior during the traffic stop was innocuous.  In its ruling, however, the trial court specifically acknowledged this evidence, but found other circumstantial evidence amply supported Rincon's guilt.

Even assuming the trial court erred in failing to address counsel's argument that the verdict was contrary to the law, any error was harmless.  (*People v. Braxton* (2004) 34 Cal.4th 798, 820 [error regarding new trial motion not reversible error unless it results in a miscarriage of justice].)

---

[9] We acknowledge the Attorney General's argument that Rincon failed to preserve this issue for appellate review because he failed to object to the trial court's ruling on this basis below.  Rincon disputes the issue was forfeited and argues, in the alternative, that trial counsel rendered ineffective assistance by failing to object.  We will exercise our discretion to decide the issue on the merits to forestall the ineffective assistance claim.  (See, e.g., *People v. Lua* (2017) 10 Cal.App.5th 1004, 1014.)

Here, after reviewing all of the evidence, the trial court concluded "given the totality of the circumstances" that there was "substantial evidence that Mr. Rincon knew exactly what was going to take place during that traffic stop, and that he did have the required intent and mental state to aid and abet Mr. Caudillo in the assault upon Officer Rasmussen." In light of the trial court's thorough assessment of the evidence, the record reveals the trial court would have denied the motion on the ground asserted by Rincon and that denial would not have been an abuse of its discretion. (*Braxton*, at p. 818.) Accordingly, any purported error in refusing to address Rincon's argument the verdict was contrary to law was harmless.

## C.    *Assembly Bill 333*

As noted above, after this appeal was fully briefed, the Legislature enacted Assembly Bill 333, which increased the proof requirements for conviction of active participation in a criminal street gang and imposition of criminal street gang enhancements. The parties filed supplemental briefs discussing the impact of this recent legislation on their convictions in this case.

Rincon and Caudillo argue that they are entitled to reversal of their convictions for active participation in a criminal street gang (count 3) and gang-related enhancements under counts 1 and 2 based on the retroactive application of the changes to section 186.22 made by Assembly Bill 333. In addition, they argue, retroactive application of section 1109 requires that their convictions for assault on a peace officer (count 1) and felon in possession of a firearm (count 2) must also be reversed. For reasons we will explain, we agree with their first contention, but not their second.

23

### 1. Amendments to Section 186.22

Section 186.22 criminalizes active participation in a "criminal street gang," and enhances the punishment for certain crimes committed "for the benefit of, at the direction of, or in association with any criminal street gang." (Former § 186.22, subds. (a), (b)(1).)

Assembly Bill 333, effective January 1, 2022, changed section 186.22 in several important respects. "[I]t amended the definitions of 'criminal street gang' and 'pattern of criminal gang activity' and clarified the evidence needed to establish that an offense benefits, promotes, furthers or assists a criminal street gang. Previously, the statute defined a 'criminal street gang,' as 'any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity.' (Former § 186.22, subd. (f), italics added.) Assembly Bill 333 narrowed the definition to 'an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in or have engaged in, a pattern of criminal gang activity.' (Assem. Bill 333, § 3, revised § 186.22, subd. (f), italics added.)" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477 (*E.H.*).)

In addition, Assembly Bill 333 changed the definition of " 'pattern of criminal activity,' " which was previously established by proof " 'that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another.' " (*E.H., supra,* 75 Cal.App.5th at p. 477.) Under the new law, the prosecution must prove the following additional elements with respect to predicate offenses: "(1) the offenses must have 'commonly benefited a criminal street gang' where the 'common benefit . . . is more than reputational'; (2) the last predicate offense must have occurred within three years of the date of the

24

currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense cannot be used as a predicate offense." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345 (*Lopez*).)

Defendants and the Attorney General agree that under the principles enunciated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), Assembly Bill 333's amendments to section 186.22 apply retroactively to defendants whose convictions are not yet final. So do we. (*Lopez, supra,* 73 Cal.App.5th at p. 344; *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1087; *E.H., supra,* 75 Cal.App.5th at p. 478.) The changes to the definitions of " 'criminal street gang' " and " 'a pattern of criminal gang activity' " in Assembly Bill 333 effectively added new elements to section 186.22, on which the jury was not instructed. (*E.H.*, at pp. 477, 479.) Accordingly, we must reverse unless it appears beyond a reasonable doubt that the error did not contribute to the verdict. (*Ibid.*)

The Attorney General concedes the gang evidence at defendants' trial, presented under the old law, fell short of meeting the requirements of the new law. Specifically, the Attorney General explains that the jury was not instructed that it had to find gang members "collectively engaged in a pattern of criminal gang activity" nor that the predicate offenses commonly benefited the gang in a way that was more than reputational as now mandated by section 186.22, and that "little, if any, evidence" was presented on those points. Because the evidence adduced at trial to prove the charges is no longer sufficient under the new law, we must reverse defendants' convictions for active participation in a criminal street gang under section 186.22, subdivision (a) and vacate the true findings on their criminal street gang enhancements under section 186.22, subdivision (b) on counts 1 and 2.

25

Further, Rincon contends the changes made by Assembly Bill 333 affect not only the gang enhancement allegations under section 186.22, but other statutes that incorporate section 186.22 by reference, including section 12022.53.[10] (*Lopez*, *supra*, 73 Cal.App.5th at pp. 346–348.)

Here, the jury found true that Caudillo personally and intentionally discharged a firearm, which caused great bodily injury to Officer Rasmussen, and that Rincon was a principal to that offense. Because an enhancement under section 12022.53, subdivision (e)(1)(A) requires a finding that Rincon committed the act for the benefit of a criminal street gang, that finding must also be vacated.

In sum, defendants' convictions for active participation in a criminal street gang under section 186.22, subdivision (a) and criminal street gang enhancements under sections 186.22, subdivision (b) on counts 1 and 2, and Rincon's section 12022.53, subdivision (e)(1) enhancement on count 1, must be reversed and remanded for retrial. (*E.H.*, *supra*, 75 Cal.App.5th at pp. 479–480.)

### 2. *Section 1109*

In addition to amending section 186.22, Assembly Bill 333 also added section 1109 to the Penal Code, which requires bifurcation of gang enhancements charged under section 186.22, subdivisions (b) or (d) to be tried separately from the underlying charges upon request from the defense, with the defendant's guilt of the underlying offense being determined first and the question of the truth of the gang enhancement determined only after guilt on the underlying offense has been established. (Stats. 2021, ch. 699,

---

[10] The jury found that Caudillo personally and intentionally discharged a firearm which caused great bodily injury to Rasmussen. Caudillo does not challenge that true finding on appeal.

§ 5; § 1109, subd. (a).)  Section 1109 also requires substantive charges of active participation in a criminal street gang be tried separately from other counts that do not require gang evidence as an element of the crime.  (Stats. 2021, ch. 699, § 5; § 1109, subd. (b).)

### a.    Retroactivity

Defendants recognize that section 1109 "is a statute governing trial procedure rather than punishment," but they argue section 1109 should apply retroactively to all cases not yet final, consistent with legislative intent and the principles of retroactivity expressed in *Estrada, supra,* 63 Cal.2d at page 745.  In their argument, defendants rely primarily on *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*), which held the provisions in Proposition 57[11] that modified the procedural requirements for trying a juvenile in adult criminal court applied retroactively to all cases not final on its effective date because "it ameliorated the possible punishment for a class of persons, namely juveniles." (*Lara*, at p. 308.)  Defendants assert that like the electorate's intent with Proposition 57 to remedy a " 'too severe' juvenile direct filing system," the Legislature, in adding section 1109, "expressed an intent to correct the unduly prejudicial impact of trying gang charges and allegations with other offenses."

The Attorney General argues that section 1109, unlike the changes to section 186.22, applies prospectively only because its provisions govern trial procedure and do not affect the substantive requirements of the gang allegations.  In support of its argument, the Attorney General cites *People v. Cervantes* (2020) 55 Cal.App.5th 927, 940, in which statutory amendments that imposed new requirements for interrogations were not retroactive because they did not "alter the substantive requirements for conviction, nor

---

[11] The Public Safety and Rehabilitation Act of 2016.

27

affect the available punishments in the event of conviction," and *People v. Sandee* (2017) 15 Cal.App.5th 294, 305, footnote 7, in which statutory amendments relating to the prohibition of governmental search of a cell phone were not retroactive because they did not mitigate the penalty for a crime, decriminalize conduct, or expand defenses.[12]

We need not decide whether section 1109 applies retroactively to nonfinal cases because, for reasons we will explain, even accepting defendants' argument that it was error to try the active participation count and gang enhancements together with the other offenses, we conclude any such error was harmless under the state law standard of error. (See, e.g., Cal. Const., art. VI, § 13; *E.H., supra,* 75 Cal.App.5th at p. 480 [defendant could not show it was " 'reasonably probable' " under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), that he would have obtained a more favorable result had gang offense and enhancement been bifurcated].)

### b.    Harmless Error

Defendants contend harmless error analysis is "inapplicable" in this circumstance because their claim for relief is based on *Estrada'*s principle of extending the ameliorative benefits of new legislation to defendants whose cases are not yet final. Defendants argue that because the benefit provided by the new law is mandatory bifurcation upon defendant's request, they are entitled to that benefit here.

Defendants rely for this argument on *People v. Vela* (2018) 21 Cal.App.5th 1099, 1112–1113, but it is inapposite.[13] In that case, the

---

[12] In his supplemental reply brief, Rincon contends these cases are both distinguishable, and to the extent they are analogous, were wrongly decided under the Supreme Court's reasoning in *Lara.*

[13] In his supplemental reply brief, Rincon cited to the appellate court's 2017 opinion, but the Supreme Court vacated that decision and transferred

28

court considered how harmless error analysis might apply to the judgment in light of the retroactive application of Proposition 57 entitling him to a juvenile transfer hearing. The court noted "[t]he jury's convictions, as well as its true findings as to the sentencing enhancements, will remain in place," and reasoned that "[n]othing [would] be gained by having a 'dispositional hearing,' or effectively a second trial," because a jury had already found the defendant guilty beyond a reasonable doubt. (*Vela*, at p. 1112.) At the same time, the court rejected the Attorney General's harmless error argument because the appellate court "was not in a position to evaluate the various factors to be considered at a juvenile transfer hearing such as [the defendant's] 'physical, mental, and emotional health at the time of the alleged offense[s].' " (*Id.* at p. 1113.) Here, the remedy sought is a new trial, not a limited hearing to evaluate " 'factual issues affecting the validity of the judgment but distinct from the issues submitted to the jury' " as in *Vela*. (*Ibid.*) Moreover, unlike the factors relevant to the decision in *Vela*, all of the evidence pertinent to our harmless error analysis was admitted at trial and is before us in the record.

We recognize that in a recent opinion, the Sixth Appellate District held that section 1109 applies retroactively to defendants whose cases are not yet final.[14] (*People v. Burgos* (2022) 77 Cal.App.5th 550, petn. for review

---

the cause for reconsideration in light of Senate Bill No. 620 (2017–2018 Reg. Sess.). (See *People v. Vela* (2017) 11 Cal.App.5th 68, review granted Jul. 12, 2017, transferred with directions to vacate opinion and reconsider cause Feb. 28, 2018, S242298.) The discussion of harmless error on which Rincon relies, however, appears in the substantially similar 2018 opinion, which we discuss herein.

[14] Justice Elia, in dissent, disagreed that section 1109 applies retroactively. (*Burgos*, *supra*, 77 Cal.App.5th at p. 569 (dis. opn. of Elia, J.).) Other recently published cases have reached the same conclusion. (*People v. Perez* (2022) 78 Cal.App.5th 192, 207 [§ 1109 does not apply retroactively to a

pending, petn. filed May 25, 2022.) In *Burgos*, the majority discussed the application of harmless error in this context, noting the "case law does not clearly establish whether or how harmless error analysis applies in this instance." (*Id*. at p. 568.) Suggesting the failure to try the gang enhancements separately "likely constitutes 'structural error,' " the court nonetheless concluded that even under a *Watson* standard of review, the error was prejudicial.[15] (*Burgos*, at p. 568.)

We disagree that failure to separately try the substantive gang offense and gang-related enhancements in this case amounts to structural error. "[S]tructural errors not susceptible to harmless error analysis are those that go to the very construction of the trial mechanism—a biased judge, total

---

trial that has already occurred]; *People v. Ramirez* (2022) 79 Cal.App.5th 48, 65 [adopting Justice Elia's dissent in *Burgos* and concluding § 1109 operates prospectively only]; see also *Ramirez*, at p. 66 (conc. opn. of Bamattre-Manoukian, J.) [elaborating on reasons section § 1109 is not ameliorative and does not apply retroactively].)

[15] The *Burgos* court did not explain why the failure to bifurcate would be structural error, beyond stating "[b]ifurcation necessarily affects the ' "framework within which the trial proceeds," ' " and noting it is difficult to assess whether the error was harmless because the nature of the proceeding would have been entirely different. (*Burgos*, *supra*, 77 Cal.App.5th at p. 568.) The court cited to *Weaver v. Massachusetts* (2017) 582 U.S. __ [137 S.Ct. 1899, 1907], but that case concerned a violation of the Sixth Amendment right to a public trial. As our Supreme Court has explained, "Categorization of an error as structural represents 'the exception and not the rule.' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 178.) Here we consider the impact of a state statutory rule of procedure governing the order in which gang-related charges should be presented to the jury rather than violation of a constitutional right that rendered the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. (See *id*. at pp. 178–179; see also Cal. Const., art. VI, § 13 [precluding reversal "for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

absence of counsel, the failure of a jury to reach any verdict on an essential element." (*People v. Gamache* (2010) 48 Cal.4th 347, 396.) Here, the purported error was in allowing the jury to hear certain gang-related evidence before determination of guilt of the underlying charges. We can meaningfully assess whether the jury would have reached the same verdict under those circumstances. (*People v. Anzalone* (2013) 56 Cal.4th 545, 554 [errors occurring during presentation of case can be "fairly examined in the context of the entire record and are amenable to harmless error review"].)

Nor are we persuaded that the failure to separately try the substantive gang offense or the gang-related enhancements in this case violated defendants' right to due process constituting federal constitutional error.[16] (See *Chapman v. California* (1967) 386 U.S. 18, 24 [requiring reversal unless violation of federal constitutional right is shown to be harmless beyond a reasonable doubt].) "Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result." (*People v. Lightsey* (2012) 54 Cal.4th 668, 699; *People v. Pinholster* (1992) 1 Cal.4th 865, 931–932 [*Watson* standard applied to failure to sever robbery count from other charges], overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.) Other courts have recently concluded that even if section 1109 applies retroactively, the failure to bifurcate can be assessed under a *Watson* harmless error standard. (See *E.H., supra,* 75 Cal.App.5th at p. 480 [defendant could not show it was " 'reasonably probable' " he would have obtained a more favorable result if his trial had been bifurcated]; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1128, 1131.)

---

[16] Although Rincon raises this point cursorily in his supplemental briefing, he fails to develop it.

Defendants contend they can show prejudice because it is unlikely the trial court would have admitted broad evidence about the behavior of Norteños in general, rather than particular to defendants, if the gang charges had been bifurcated. For example, defendants argue, the court likely would not have admitted the testimony that " 'Norteños assault their enemies' " to instill fear and that they act in a coordinated fashion as " 'moving parts' " in such assaults. But defendants offer no authority that the gang expert's testimony would be inadmissible to prove the assault and possession of a firearm offenses. Assembly Bill 333 does not bar the admission of gang evidence related to the underlying charges. (See, e.g., *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [evidence of gang membership and activity can help prove identity, motive, specific intent, and other issues pertinent to guilt in cases not involving gang enhancements]; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167 [as general rule, gang-related evidence may be admissible if relevant to a material issue in the case].)

In addition, the sanitized presentation of the predicate crimes presented at trial was not so inflammatory that it would have persuaded the jury to convict defendants regardless of their actual guilt. The jury was also instructed it could not use gang evidence to find that either defendant was a person of bad character or had the disposition to commit crime. We presume the jury followed those instructions, and defendants point to nothing in the record to rebut that presumption. (*People v. Franklin* (2016) 248 Cal.App.4th 938, 953.)

In any event, even without the gang-related evidence, the totality of the circumstantial evidence against defendants was strong. Indeed, Caudillo does not challenge the sufficiency of the evidence supporting either of his convictions, nor does Rincon argue the evidence supporting his felon in

possession of a firearm conviction was insufficient. Moreover, as we have already discussed with respect to Rincon's conviction for aiding and abetting assault on a peace officer, ample evidence supported his conviction here. Officers offered eyewitness testimony regarding the shooting, the jury saw dash cam and body camera footage of the incident, Yvonne D. testified she saw both defendants with firearms before the shooting, Rincon sent text messages stating he had two firearms and needed ammunition for the weapon used in the assault, and Rincon drove and parked his vehicle in such a manner as to facilitate the assault, failed to turn off the vehicle when ordered to do so, sped away immediately after shots were fired, and was found hiding in a closet from which he had to be removed by police officers with force. Under these circumstances, defendants have not shown it is reasonably probable they would have achieved a different result had the gang-related charges been separately tried.

Accordingly, we will affirm Rincon's and Caudillo's convictions for assault on a peace officer on count 1 and felon in possession of a firearm on count 2.

## D.    *Sentencing Issues*

Caudillo's only claims in his opening brief on appeal relate to sentencing. He argues several errors in the pronouncement of judgment and abstract of judgment, but all of the issues raised in the opening brief on appeal are either withdrawn in his reply brief or obviated by our reversal of the verdict on count 3 and the true findings on the gang-related enhancements to counts 1 and 2.[17] The Attorney General and Rincon also

---

[17] In his reply brief, Caudillo argues for the first time that "[t]he Indeterminate Abstract at 3 CT 736 adds a five-year term for prior serious conviction under Penal Code § 667, subd. (a)(1)" and the same prior conviction enhancement is improperly included in his determinate sentence

disagree as to whether the trial court erred in imposing a consecutive two-year sentence on the gang enhancement to count 2. Because we must vacate the true finding on this enhancement, it is unnecessary to resolve the issue.

## III.

## DISPOSITION

We reverse defendants' convictions for active participation in a criminal street gang under section 186.22, subdivision (a) and vacate the true findings on their gang enhancement allegations under section 186.22, subdivision (b). We also vacate the true finding on Rincon's section 12022.53, subdivision (e)(1) enhancement. We remand to the trial court with directions to give the prosecution an opportunity to retry the offense and enhancements under the law as amended by Assembly Bill 333. If the prosecution elects not to do so, defendants shall be resentenced in a manner consistent with this opinion. In all other respects, we affirm the judgment.

---

calculation. The indeterminate abstract of judgment to which Caudillo cites, however, is Rincon's indeterminate abstract of judgment.

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

WISS, J.*

A164248
*People v. Caudillo*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.